**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BERNARDO TORRES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 18 C 2603 |
| | ) | |
| **CITY OF CHICAGO, a municipal corporation,** | ) | **Chief Judge Rebecca R. Pallmeyer** |
| **Chicago Police Officer Fernando Velez,** | ) | |
| **Chicago Police Officer V. Gurrola, Chicago** | ) | |
| **Police Officer Patrick Keating, Chicago** | ) | |
| **Police Sergeant T. Horton, Chicago Police** | ) | |
| **Sergeant A. Sanchez, and Chicago Police** | ) | |
| **Officer C. Contreras** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Bernardo Torres brought this 42 U.S.C. § 1983 action against six Chicago police officers[1] and the City of Chicago. Plaintiff alleges that the Defendant officers violated his rights in April 2016 when they performed a "knock and talk" at his apartment—entering and searching his home without a warrant, and arresting him without probable cause. Defendants have moved for partial summary judgment [76]. For the reasons explained below, the court declines to dismiss the case for failure to prosecute merely because Plaintiff is currently in Mexico. The court concludes that Defendants are entitled to summary judgment on Plaintiff's claims for unlawful entry and unlawful search (Counts I and II) as to Officers Keating and Horton, and for false arrest (Count IV) as to all Defendants. Defendants' motion with respect to Plaintiff's claim of unreasonable seizure (Count III) is granted in part and denied in part. Because there are genuine

---

[1] These include Chicago Police Officers Fernando Velez, Victor Gurrola, Patrick Keating, and Cynthia Contreras; and Chicago Police Sergeants Thomas Horton and Alejandro Sanchez. By stipulation of the parties, the court has dismissed Plaintiff's claims against Officer Contreras and Sergeant Sanchez with prejudice. (Stipulation and Order of Dismissal with Prejudice [90].)

1

disputes concerning whether Plaintiff consented to the officers' entry and search, his claims against Officers Gurrola and Velez for unlawful entry and unlawful search, and indemnification by the City (Count VI), survive this motion. Finally, Defendants' motion to strike [93] portions of Plaintiff's statement of material facts [87] is granted in part and denied in part.

## **BACKGROUND**

On April 11, 2016, Plaintiff lived in an apartment at 5245 South Whipple, Chicago, Illinois. (Defendants' Statement of Material Facts (hereinafter "Defs.' SOF") [79] ¶ 9.) In the course of a drug-trafficking investigation, Defendant Officer Thomas Horton asked Defendant Officers Victor Gurrola and Fernando Velez to perform a "knock and talk" at the apartment. (*Id.* ¶20.) Defendants have admitted that they did not have a warrant, and that there were no exigent circumstances justifying a warrantless search. (*See* Answer [29] ¶¶ 21, 23.) It is undisputed that Defendant Officers Gurrola and Velez knocked on the front door of the residence, that Plaintiff answered the door, and that the two officers entered. (*Id.* ¶¶ 20–21.) What is disputed is what happened before Officers Gurrola and Velez stepped inside. (*See* Pl.'s Resp. to Defs.' SOF [88] ¶ 21.) Defendants say that there was "some initial conversation" before they entered, while Plaintiff asserts that the officers simply "barged in" after he opened the door slightly. (*Compare* Defs.' SOF ¶ 21, *with* Plaintiff's Statement of Material Facts (hereinafter "Pl.'s SOF") [87] ¶ 8.) Defendants also contend that Officers Gurrola and Velez "engaged in conversation" with Plaintiff and his landlord, Huber Maldonado, who was also living in the apartment, after the officers entered. (Defs.' SOF ¶ 22; Pl.'s SOF ¶ 4.) But according to Plaintiff, the officers "immediately handcuffed" Mr. Torres, with no conversation. (Pl.'s SOF ¶ 12; Pl.'s Resp. to Defs.' SOF ¶ 22.)

Once inside the apartment, Defendant Officer Gurrola called Defendant Officer Horton, informing him and the rest of the investigative team that Plaintiff and Mr. Maldonado had verbally consented to a search of the residence. (Defs.' SOF ¶ 22–23.) Plaintiff insists that he never gave his consent, and that Defendant Officer Gurrola's statement was false. (Pl.'s Resp. to Defs.' SOF

¶ 23.)[2]  In any event, Defendant Officers Horton and Patrick Keating also entered the apartment and searched it, uncovering a handgun, cocaine, and cash, and Plaintiff and Maldonado were arrested.[3]  (Defs.' SOF ¶ 24–25.)  At some point during or after the search, the Defendant Officers gave Plaintiff a consent to search form, which he refused to sign.  (Pl.'s SOF ¶¶ 23–25.)[4]

Plaintiff was charged with possession of a controlled substance and possession of a controlled substance with the intent to deliver.  (Pl.'s SOF ¶ 26.)[5]  On March 21, 2017, the Circuit

---

[2]      In his response to Defendants' SOF, Plaintiff has identified Officer Velez as the one who made the call to Officer Horton, but this appears to be inaccurate.  (*See* Pl.'s Resp. to Defs.' SOF ¶ 23.)  Defendant Officers Velez and Gurrola both testified that Officer Gurrola called Officer Horton.  (Velez Dep. [79-4] 51:15–22; Gurrola Dep. [79-5] 33:16–34:9.)  In his own deposition, Plaintiff did not identify which officer placed the call; he said only that "[t]hey were using their cell phones."  (Torres Dep. [79-3] 80:14–82:1.)  For purposes of this opinion, the court assumes that it was Officer Gurrola who called Officer Horton.

[3]      Though he asserts that Officers Velez and/or Gurrola handcuffed him before searching the apartment, Plaintiff has not specifically identified the officer who arrested him.  Defendants have not clarified this either, but the court notes that the arrest report identifies Officer Keating as the arresting officer.  (*See* Arrest Report of Bernardo Torres, Ex. 3 to Keating Dep. [79-6] at 3.)

[4]      Defendants note that in Fact No. 23, Plaintiff says that the Defendant Officers gave Plaintiff the form "[w]hen the policemen were going to take Bernardo and Maldonado to the station," suggesting that drugs had already been found and the search was complete, while Fact No. 24 says that the officers "did not stop their search when Bernardo and Maldonado refused to sign a written consent form," suggesting the search was ongoing.  (*See* Defs.' Resp. and Objs. to and/or Mot. to Strike Pls.' SOF (hereinafter "Defs.' Resp.") [93] ¶24.)  Whatever the significance of this discrepancy may be, it is undisputed that Plaintiff was given a consent form and refused to sign it.  *See* Local Rule 56.1(a) ("All material facts set forth in the statement filed [by the opposing party] will be deemed admitted unless controverted by the statement of the moving party.").

The court also overrules Defendants' motion to strike Fact No. 24 merely because it is based upon the transcript of the suppression hearing in state court.  *See Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010) (noting that courts may take judicial notice of prior proceedings in a case involving the same litigant); FED. R. EVID. 201(b).  The court does not presume the truth of all of the testimony, but the fact that witnesses made those statements—and the accuracy of the transcript in recording those statements—"cannot reasonably be questioned."  FED. R. EVID. 201(b)(2).  Additionally, the portion of the transcript that Plaintiff cites (Ex. 2 to Pl.'s SOF, 134:1–10) is from the cross-examination of Officer Velez, rendering it admissible as the statement of a party opponent.  *See* FED. R. EVID. 801(d)(2).

[5]      The court recognizes that Defendants have objected to and moved to strike this fact from Plaintiff's SOF because it is purportedly irrelevant to their motion for summary judgment, and Plaintiff does not explicitly rely on it in his opposition brief.  (*See* Defs.' Resp. ¶ 26.)  As with

Court of Cook County granted Plaintiff's motion to suppress evidence seized at his apartment, concluding that Defendants lacked consent to search. (*Id.* ¶ 27.)[6] The State's Attorney asked for a stay pending a decision to appeal, and Plaintiff was not released until April 17, 2017, after spending 371 days in Cook County Jail. (*Id.* ¶ 28–29.)[7]

Plaintiff currently lives in Mexico (Defs.' SOF ¶ 27), and the parties dispute whether he is able to return to the United States legally. (*Compare id.*, *with* Pl.'s Resp. to Defs.' SOF ¶ 27.) Defendants suggest that he cannot do so (Defs.' SOF ¶ 27), while Plaintiff insists that the only reason he has not returned is that, as of the time of his deposition, he lacked the funds required by federal regulations for a temporary stay visa. (Pl.'s SOF ¶ 32; Pl.'s Mem. in Opp'n to Defs.' Mot. Summ. J. (hereinafter "Pl.'s Mem.") [86] at 2 (citing 22 C.F.R § 41.31).) *But see* Defs.' Resp. ¶ 32 (objecting to this fact); Defs.' Reply in Support of Mot. for Summ. J. (hereinafter "Defs.' Reply") [92] at 1–2 (same).) Plaintiff has not offered evidence that he applied for a visa, nor has he identified the regulation that prevented him from obtaining one, but the relevant provision seems to be 22 C.F.R. § 41.31(a)(3), which requires that aliens seeking temporary visas persuade

---

Plaintiff's Fact No. 24, the court overrules the motion to strike Fact No. 26 because the fact that Plaintiff was charged is "not subject to reasonable dispute." FED. R. EVID. 201(b).

[6] Defendants object to this statement (*see* Defs.' Resp. ¶ 27 (citing FED. R. EVID. 403)), but the court is free to take judicial notice of the state court proceedings. *See In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (holding that state court orders are public records and therefore the proper subject of judicial notice); FED. R. EVID. 201(b), 901(b)(7). Despite Defendants' suggestion to the contrary (Defs.' Resp. at 2), it is not necessary for Plaintiff to request that the court take judicial notice of the transcript. *See* FED. R. EVID. 201(c)(1) ("The court may take judicial notice on its own . . . ."). Defendants' collateral estoppel challenge to this statement is addressed below.

[7] Defendants again object to and move to strike these facts as prejudicial. (*See* Defs.' Resp. ¶ 28–29 (citing FED. R. EVID. 403).) The court fails to see how the probative value of these facts is "*substantially outweighed*" by the risk of unfair prejudice to Defendants. FED. R. EVID. 403 (emphasis added). Rather, these facts go to the heart of Plaintiff's claims for damages flowing from his prolonged detention. The court will strike the phrase "As a result of the Defendants' unconstitutional search of the apartment," because it is a legal conclusion, not a fact. Defendant's Rule 403 objection to Plaintiff's Fact No. 29 is otherwise overruled.

4

a consular official that "[a]dequate financial arrangements have been made to enable the alien to carry out the purpose of the visit to and departure from the United States."[8]  Plaintiff's attorney has asserted that "Plaintiff was unable to obtain a visa because, among other things, the United States requires that applicants for a visa show proof of property ownership and a level of finances that would indicate that the applicant intends to return to Mexico."  (Pl.'s Mot. Protective Order [45] ¶ 3.)

Plaintiff brings five counts against the Defendant Officers and one count for indemnification against the City of Chicago.  (*See* First Amended Complaint (hereinafter "Am. Compl.") [24] at 4–10.)  Count I alleges warrantless entry in violation of the Fourth Amendment; Count II alleges warrantless search in violation of the Fourth Amendment; Count III alleges "illegal restraint" in violation of the Fourth Amendment; and Count IV alleges false arrest in violation of the Fifth and Fourteenth Amendments.  Mr. Torres has withdrawn Count V as duplicative of Count III.  (Pl.'s Mem. at 8.)  Finally, Count VI seeks indemnification from the City of Chicago under 745 ILCS 10/9-102, which provides that public entitles are liable for torts that their employees commit within the scope of their employment.  The Defendant Officers have admitted that they were acting within the scope of their employment and under color of state law at all times pertinent to the Complaint.  (Answer ¶¶ 13–14.)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Courts must construe facts in the light most favorable to the non-moving party and draw all reasonable inferences in their favor.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986);

---

[8]  Alternatively, Plaintiff's application may have been denied based on 22 C.F.R. § 41.31(a)(1), which authorizes consular officers to "require the posting of a bond with the Secretary of Homeland Security in a sufficient sum to ensure that at the end of the temporary visit, or upon failure to maintain temporary visitor status . . . the alien will depart from the United States."

*see also Tolliver v. City of Chicago*, 820 F.3d 237, 239 (7th Cir. 2016) (crediting § 1983 plaintiff's version of facts where he was the party opposing summary judgment).

## DISCUSSION

### A.    Plaintiff's Ability to Prosecute

Defendants first argue that this case must be dismissed for failure to prosecute because Mr. Torres's inability to return to the United States from Mexico renders him unable to prosecute his case. (Defs.' Mem. in Support of Mot. for Summ J. (hereinafter "Defs.' Mem.") [77] at 3–4; Defs.' Reply at 1–3 (citing FED. R. CIV. P. 41(b)).) Defendants cite a number of unreported cases involving *pro se* litigants who had been deported and were unable to reenter or hire counsel in the United States to proceed with their civil cases.[9] (Defs.' Mem. at 2–4.) Mr. Torres rightly notes that unlike the plaintiffs in those cases, he has retained counsel, and he has already been deposed. (Pl.'s Mem. at 2–3.) There is also no evidence that Mr. Torres was deported (Pl.'s Mem. at 3); he testified at his deposition that he returned to Mexico after being released from Cook County Jail because he wanted to see his family. (Pl.'s Resp. to Defs.' SOF ¶ 27 (citing Torres Dep. 111:3–23).) The court agrees with Plaintiff that his case differs from those cited by Defendants in that he continues to actively pursue his case and was able to complete discovery. (*See* Joint Status Report [73] at 1 ("Fact discovery has been completed.")). But Defendants are correct that he will likely need to return to the United States for trial.

---

[9]    *Ibarra v. Henderson*, No. 14-cv-0395-MJR-SCW, 2015 WL 5162276, *1 (S.D. Ill. Sept. 1, 2015) (granting motion to dismiss for want of prosecution where *pro se* plaintiff had been deported and numerous discovery documents were returned undelivered); *Del Rio v. Morgado*, No. CV 10-8955-FMO (JPR), 2013 WL 5520218, *1–2 (C.D. Cal. Oct. 3, 2013) (granting motion to dismiss for failure to prosecute where *pro se* plaintiff had been deported, failed to appear for a deposition, and was unable to find an attorney to represent him); *Kuar v. Mawn*, No. 08-CV-4401 JFB ETB, 2012 WL 3808620, *1 (E.D.N.Y. Sept. 4, 2012) (denying motion to dismiss for failure to prosecute, but giving *pro se* plaintiff a deadline to either (1) file a copy of his request to the Department of Homeland Security for permission to reapply for admission to the United States, or (2) retain counsel); *Adegbuji v. Middlesex Cty.*, 347 Fed. App'x 877, 882 (3d Cir. 2009) (affirming dismissal for failure to prosecute where *pro se* plaintiff was deported and failed to appear for trial twice).

6

Defendants have not sought summary judgment on Counts I and II with respect to Officers Gurrola and Velez; they acknowledge that consent is disputed. The court must therefore wade into the thorny issue of whether those claims, at minimum, can go forward. In *Garcia-Martinez v. City & Cty. of Denver*, 392 F.3d 1187 (10th Cir. 2004), a case cited by neither party, the Tenth Circuit considered whether a § 1983 plaintiff's deposition testimony should have been admitted at trial where the plaintiff, a Honduran who had been in the United States illegally when he was the victim of alleged excessive force, returned to Honduras before trial. The district court had rejected two possible grounds for admitting the deposition testimony: Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804, both of which permit the use of deposition testimony in some circumstances when a witness is unavailable at the time of trial. Under Rule 32(a), "A party may use for any purpose the deposition of a witness . . . if the court finds . . . that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, *unless it appears that the witness's absence was procured by the party offering the deposition.*" FED. R. CIV. P. 32(a)(4)(B) (emphasis added). Similarly, Rule 804(b)(1) carves out an exception to the rule against hearsay for the former testimony of "unavailable" witnesses if (A) their testimony "was given as a witness at a . . . lawful deposition" and (B) "is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." In turn, Rule 804(a)(5) defines a witness as "unavailable" for purposes of Rule 804(b)(1) if the declarant "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance."

In *Garcia-Martinez*, the Tenth Circuit held that the district court did not abuse its discretion by concluding that neither rule supported admission of plaintiff's deposition testimony. 392 F.3d at 1190–93. The Rule 32(a) exception did not apply because the plaintiff "procured his own absence from trial" by choosing to leave the country, even though the reason for his departure was to avoid the risk of being arrested for illegal entry. *Id.* at 1191–92. The Tenth Circuit noted

7

that Garcia-Martinez "made scant efforts to make other arrangements to appear temporarily for trial or to make himself available for remote testimony," suggesting that the outcome might have been different if he had explored those possibilities. *Id.* at 1192. The court stopped short of establishing "a per se rule that any plaintiff who procures his own absence from trial is not eligible to seek refuge in Rule 32," but noted that live testimony is preferable, particularly when "key factual issues at trial turn on the credibility and demeanor of the witness," and when the witness is the plaintiff. *Id.* (internal quotation marks omitted) (quoting 7 Moore's Federal Practice – Civil § 32.24[5] (3d ed. 2003)). Turning to Rule 804, the Tenth Circuit concluded that Garcia-Martinez was not "unavailable" within the meaning of the rule because "he voluntarily failed to return" and "his absence at trial was calculated." *Id.* at 1193.[10]

Crucially, the district court in *Garcia-Martinez* did not dismiss the plaintiff's suit out of hand merely because the plaintiff was in Honduras. Rather, the district court allowed the case to proceed to trial, and the jury returned a verdict in favor of the defendants. *Id.* at 1190. This court concludes that if Plaintiff is unable to obtain a visa, his physical absence from the trial would not by itself result in "great prejudice" to the Defendants. (Defs.' Resp. at 1.) To the contrary: Plaintiff's inability to offer live testimony would likely advantage Defendants. Should the court admit his deposition testimony, the court notes that he has already been thoroughly cross-examined. Concerns about the jury's ability to assess Plaintiff's credibility and demeanor may be less salient in this case because Mr. Torres does not speak English, and therefore his trial testimony would need to be mediated through an interpreter regardless.

In any event, a dispute about the admissibility of Mr. Torres's deposition testimony in lieu of live testimony at trial is premature. Plaintiff makes an indirect reference to Rule 32(a)(4), noting

---

[10] *But see id.* at 1195–96 (Lucero, J. dissenting) (disagreeing with the majority's conclusion that the plaintiff had procured his own absence from trial) ("The federal rules cannot have envisioned that a party break the law and risk arrest to testify, nor that he tilt at windmills to show that he tried.").

that "subject to the Court's discretion, because Plaintiff lives more than 100 miles from this Court, his trial testimony may be memorialized by deposition or presented by video conference." (Pl.'s Resp. to Defs.' SOF ¶ 27.) But the hearsay implications of using Plaintiff's deposition testimony—namely, whether Plaintiff is "unavailable" within the meaning of Rule 804—remain unexplored. For now, the court reserves ruling on the admissibility of Plaintiff's deposition testimony until that issue (and the application of relevant rules) is presented by way of motions in limine.

It bears mention that testimony may, in some circumstances, be presented via videoconference. *See* FED. R. CIV. P. 43(a) ("For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."). This option may be preferable given the "long-established principle that testimony by deposition is less desirable than oral testimony." *Garcia-Martinez*, 392 F.3d at 1193. Indeed, in response to the COVID-19 pandemic, some courts have opted to conduct entire trials by videoconference. *See, e.g.*, *Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n*, 470 F. Supp. 3d 735, 741 (E.D. Mich. 2020) (finding that the pandemic amounted to "compelling circumstances" justifying conducting a bench trial via videoconference under Rule 43(a)). Defendants' motion for dismissal under Rule 41(b) is denied without prejudice.

**B.      Counts I and II (Warrantless Entry and Warrantless Search)**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Generally, warrantless searches are per se unreasonable unless an exception to the warrant requirement applies, such as consent to search or exigent circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) (defining consent to search); *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403–04 (2006) (discussing the exigent circumstances exception). 42 U.S.C. § 1983 creates a right of action against persons who, while acting under color of state law, cause the deprivation of someone's constitutional rights.

9

As discussed above, the Defendant Officers have admitted that they were acting within the scope of their employment and under color of state law at all times pertinent to the Complaint. (Answer ¶¶ 13–14.)  They also admit that they did not have a warrant to search Plaintiff's apartment, and that there were no exigent circumstances justifying a warrantless search.  (*Id.* ¶¶ 21, 23.)  If Plaintiff voluntarily consented to the entry and search, however, then the Defendant Officers did not violate his Fourth Amendment rights.  *See Schneckloth*, 412 U.S. at 227.  The parties dispute whether Plaintiff (or his landlord, Mr. Maldonado) provided verbal consent for Officers Gurrola and Velez to enter and search the apartment.  (*Compare* Defs.' SOF ¶¶ 21–23, *with* Pl'.s Resp. to Defs.' SOF ¶¶ 21–23.)  Accordingly, Defendants seek summary judgment on Counts I and II only as to Officers Keating and Horton.  (Defs.' Mem. at 5–8.)

1.      **Defendant Officers Keating and Horton Did Not Personally Cause the Constitutional Violations Alleged in Counts I and II**

Defendants' summary judgment argument as to Officers Keating and Horton turns on the undisputed fact that they entered the apartment only after receiving a call from Officer Gurrola, who told them that Plaintiff and Mr. Maldonado had consented to the entry and search.  (Defs.' SOF ¶¶ 23–24.)  Plaintiff objects that the information conveyed in the call was false, but he otherwise concedes that Officers Keating and Horton did not enter the apartment until after the call.  (Pl.'s Resp. to Defs.' SOF ¶¶ 23–24.)

To determine whether summary judgment is appropriate as to Officers Keating and Horton, the court must assess their responsibility for entering and searching Plaintiff's apartment without his consent.  "An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation."  *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (emphasis in original) (quoting *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)); *see also Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the

unconstitutional actions."). "In other words, the official's act must both be the cause-in-fact of the injury and its proximate cause." *Hoffman v. Knoebel*, 894 F.3d 836, 841 (7th Cir. 2018) (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012)).

Here, there is no evidence that Officers Keating and Horton personally participated in the "knock and talk" or otherwise attempted to gain consent from Plaintiff or Mr. Maldonado. They were neither the but-for cause of the constitutional violations alleged in Counts I and II, nor the proximate cause of those violations, because they arrived after Officers Gurrola and Velez allegedly failed to procure Plaintiff's consent. As explained below, even when viewing the evidence in the light most favorable to Plaintiff, their reliance on Officer Gurrola's statement that consent had been obtained was not unreasonable. It follows that Officers Keating and Horton did not personally cause the warrantless entry and warrantless search of Plaintiff's apartment.

Plaintiff attempts to rebut this conclusion by arguing that, because Plaintiff and Mr. Maldonado were allegedly already in handcuffs by the time Officers Keating and Horton arrived at the residence (Pl.'s SOF ¶¶ 19–20), it should have been obvious that Plaintiff had not consented. (Pl.'s Resp. at 3–4.) Defendants dispute that Plaintiff was handcuffed when Officers Keating and Horton entered the apartment.[11] (Defs.' Resp. [93] ¶ 20.) Assuming for purposes of resolving this motion that Plaintiff's version of events is true, the fact that Plaintiff was handcuffed would not have been a "red flag" that he did not consent to the search. It is undisputed that the Defendant Officers did not discover drugs in the apartment until after Officers Horton and Keating arrived (Defs.' SOF. ¶¶ 24–25; Pl.'s Resp. to Defs.' SOF ¶¶ 24–25), so Defendants did not yet have probable cause to arrest Plaintiff. But there were other plausible justifications for handcuffing Plaintiff: courts have upheld the use of handcuffs during a search where the

---

[11]     Officers Velez and Keating testified that Plaintiff and Mr. Maldonado were not handcuffed when the other officers entered. (Velez Dep. 54:23–24, Ex. D to Defs.' SOF [79-4]; Keating Dep. 53:3–7, Ex. F to Defs.' SOF [79-6].) Officers Gurrola and Horton were not asked at their depositions about whether Plaintiff and Mr. Maldonado were handcuffed. (*See generally* Gurrola Dep., Ex. E to Defs.' SOF [79-5]; Horton Dep., Ex. H to Defs.' SOF [79-8].)

government's interest in maintaining safety outweighs the intrusion to the detainee's liberty. *See, e.g.*, *Muehler v. Mena*, 544 U.S. 93, 99–100 (2005) (concluding that officers reasonably handcuffed the occupant of a home during a two-to-three-hour search for weapons); *see also Matz v. Klotka*, 769 F.3d 517, 527 (7th Cir. 2014) (observing that "using handcuffs generally signifies an arrest," but "we have recognized exceptions for concerns such as officer safety" during a *Terry* stop). Of particular relevance here, "[d]rug crimes are associated with dangerous and violent behavior and warrant a higher degree of precaution." *United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011). Moreover, Plaintiff has not cited any authority for the proposition that handcuffing the subject of a search indicates that the subject did not consent.

Plaintiff also makes much of the fact that he refused to sign a consent to search form, and that this should have put Officers Keating and Horton on notice that he did not provide verbal consent earlier. (Pl.'s Resp. at 4; Pl.'s SOF ¶¶ 23–24.) Plaintiff argues: "When, as is the case here, a person is not told of his right to refuse a police search and has not signed a consent to search form before a search is performed, the [Fourth] Amendment is violated." (Pl.'s Resp. at 4 (citing *United States v. Sanchez-Jaramillo*, 637 F.2d 1094, 1099–1100 (7th Cir. 1980)).) This argument misstates the law on two fronts. First, the Fourth Amendment does not impose a duty on law enforcement officers to notify persons of their right not to consent to a search. *United States v. Drayton*, 536 U.S. 194, 206–07 (2002) ("The [Supreme] Court has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search."); *see, e.g.*, *United States v. Tyson*, 360 F. Supp. 2d 798, 808 (E.D. Va. 2005) (applying *Drayton* and concluding that, although an officer did not explicitly warn the defendant of his right to withhold consent to search his home, the totality of the circumstances indicated that consent was voluntary). *Sanchez-Jaramillo*, which Plaintiff cites, is distinguishable because a codefendant in that case consented to a search only after he was illegally detained, thereby subjecting the government to a "heavy burden" to show

12

that his consent was voluntary. 637 F.2d at 1099. The court determined that federal agents' failure to notify the codefendant of his right to refuse was one factor indicating that his consent was involuntary, *id.* at 1099–1100, but the court did not hold that such notice is required in all circumstances.

Second, the Fourth Amendment does not require officers to obtain written consent; consent may be given verbally, subject to *Schneckcloth*'s totality-of-the-circumstances test for voluntariness. *Schneckcloth*, 412 U.S. at 227; *see United States v. Price*, 54 F.3d 342, 347 (7th Cir. 1995) (concluding that defendant consented to a warrantless search of his vehicle where he verbally consented to an officer's request to search, even though he subsequently refused to sign a consent form). In *Sanchez-Jaramillo*, Plaintiff's preferred authority, the court observed that the agents did not give a codefendant a consent to search form; but the court did not hold that such forms are a prerequisite for voluntary consent, and it did not discuss the implications of declining to sign a form if one is provided. 637 F.2d at 1100.

Because there are genuine disputes of material facts, this court cannot determine whether Plaintiff consented at this stage of the proceedings. But in light of the above precedents, Plaintiff's refusal to sign a written consent form would not have put Officers Keating and Horton on notice that Plaintiff did not provide verbal consent to Officers Gurrola and Velez. The court concludes that Officers Keating and Horton did not personally cause the warrantless entry and warrantless search of Plaintiff's apartment and are entitled to summary judgment on this basis. To the extent Plaintiff's arguments have weight, the court would nevertheless conclude that Officers Keating and Horton have qualified immunity from liability here, as discussed below.

### 2. Defendant Officers Keating and Horton Are Entitled to Qualified Immunity

Qualified immunity shields government officials from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In practice, this

13

means that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). Although qualified immunity is an affirmative defense, once a defendant invokes it, the burden shifts to the plaintiff to argue that it should not apply. *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020). On summary judgment, this court must decide (1) whether the facts that plaintiff has shown make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also id.* at 236 (holding that courts may conduct these inquiries in either order).

The right to be free of the warrantless search of a home when an occupant expressly refuses consent is clearly established. *See Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (holding that "a physically present co-occupant's stated refusal to permit entry [renders a] warrantless search unreasonable and invalid as to him"). Even when viewing the facts in the light most favorable to Plaintiff, however, he has not shown that Officers Keating and Horton violated that right. As discussed above, these officers did not perform the "knock and talk" and were not present when Plaintiff either consented or refused to consent. The undisputed facts indicate that Officers Keating and Horton relied on Officer Gurrola's communication that Plaintiff had consented to the warrantless entry and search of his apartment. (Defs.' SOF ¶¶ 23–24; Pl.'s Resp. to Defs.' SOF ¶¶ 23–24.)

The court concludes that their reliance was reasonable. *See Williams v. Jaglowski*, 269 F.3d 778, 781–82 (7th Cir. 2001); *Apple v. Orange Cty. Sheriff's Dep't*, No. 4:08-CV-206-TWP-WGH, 2010 WL 3211047, *9 (S.D. Ind. Aug. 12, 2010); *Lipscomb v. Knapp*, No. 07 C 5509, 2009 WL 3150745, *10 (N.D. Ill. Sept. 30, 2009). In *Williams*, the Seventh Circuit held that defendant officers had at least arguable probable cause for making an arrest, and this entitled them to

qualified immunity. Although the court concluded that probable cause was lacking for the precise offense with which the plaintiff was charged, qualified immunity still applied because there was probable cause to arrest her for a closely related offense. 269 F.3d at 781–85. In *Apple*, the district court concluded that officers were entitled to qualified immunity where they had reasonably relied on other officers' representations that the owners of a garage had consented to its search. 2010 WL 3211047 at *9–10. Finally, in *Lipscomb*, the magistrate judge concluded that an officer's reliance on another officer's probable cause determination was reasonable, even if that determination was flawed, and therefore the first officer was entitled to qualified immunity. 2009 WL 3150745, at *10. *Williams*, *Apple*, and *Lipscomb* illustrate the principle that even if Plaintiff did not consent, Officers Keating and Horton are entitled to qualified immunity because their reliance on Officer Gurrola's representation was reasonable.

Plaintiff's version of events does not establish that Officers Keating and Horton participated in a search that "they knew was non-consensual." (Pl.'s Mem. at 5.) As discussed above, these officers had little reason to doubt that Plaintiff had already consented: the fact that Plaintiff was in handcuffs would not have unambiguously signaled that he had not consented, nor would his refusal to sign a consent form; consent could be given verbally. *See Price*, 54 F.3d at 347. Even if Officers Keating and Horton should have surmised that the search was not consensual, qualified immunity protects them from liability because their belief that Officers Gurrola and Velez had obtained consent was reasonable. Concluding otherwise would require each officer in an investigative team to individually confirm that a person had consented before participating in a search.[12]

---

[12] *See, e.g.*, *United States v. Hensley*, 469 U.S. 221, 231 (1985) ("[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and . . . officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.").

The court agrees with Defendants that Plaintiff's reliance on *Shroyer v. United States*, 904 F. Supp. 2d 914 (N.D. Ind. 2012) is misplaced. The defendant officers in *Shroyer* conducted a "knock and talk" and asked for the plaintiff's consent to search her home. Although the plaintiff initially provided verbal consent, she later refused to sign a consent to search form. *Id.* at 919. The district court held that the defendants were not entitled to qualified immunity because "a reasonable jury could find" that the encounter evolved into a seizure. *Id.* at 921. Crucially, the court did not hold that the defendants had violated plaintiff's constitutional rights, only that disputed material facts regarding the level of police coercion involved precluded summary judgment. *Id.* at 922–23. Contrary to Plaintiff's insistence, *Shroyer* hardly "makes the unconstitutionality of Keating's and Horton's actions clear." (Pl.'s Mem. at 6.)

Finally, Plaintiff is incorrect that the Fourth Amendment requires officers to have reasonable suspicion of criminal activity before conducting a search. (*See* Pl.'s Mem. at 6.) The Fourth Amendment generally requires a warrant supported by probable cause, but in the absence of a warrant, officers may conduct a search after obtaining consent. Moreover, officers do not need reasonable suspicion to perform a knock and talk. *See, e.g.*, *United States v. Adeyeye*, 359 F.3d 457, 461–62 (7th Cir. 2004) (holding that customs agents' use of a knock and talk was not a seizure requiring reasonable suspicion). Plaintiff's discussion of reasonable suspicion is therefore irrelevant to whether Officers Keating and Horton are entitled to qualified immunity.

### 3. Collateral Estoppel

Defendants believe that Plaintiff is, in effect, attempting to rely on collateral estoppel as a basis for finding that the Defendant Officers lacked consent to enter and search Plaintiff's apartment. (Defs.' Reply at 7 (conceding that "Plaintiff does not label it as such").) The court does not read Plaintiff's brief as making such an argument. (*See* Pl.'s Mem. at 5–7.) Instead, it appears that Plaintiff has simply argued that Officers Keating and Horton should have known that he had not consented to the search. To the extent Plaintiff would seek to make a collateral

16

estoppel argument, the court agrees that it would be inappropriate to accept the state court's conclusion, in the context of a suppression hearing, that Plaintiff did not consent. Whether Plaintiff provided consent to Officers Gurrola and Velez will need to be sorted out at trial.

State criminal proceedings may have preclusive effect with respect to federal § 1983 actions. *Allen v. McCurry*, 449 U.S. 90, 104 (holding that collateral estoppel, also known as issue preclusion, may bar a § 1983 plaintiff from relitigating a Fourth Amendment claim that he lost at a suppression hearing in state court). Federal courts apply the same preclusion rules that would be applied by the state court that rendered the initial judgment. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (citing 28 U.S.C. § 1738). In turn, Illinois courts apply collateral estoppel when "1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *El Ranchito, Inc. v. City of Harvey*, 207 F. Supp. 2d 814, 819 (N.D. Ill. 2002) (internal quotation marks and citation omitted). Illinois courts permit the use of offensive collateral estoppel, but only with caution. *American Family Mut. Ins. Co. v. Savickas*, 193 Ill.2d 378, 390, 739 N.E.2d 445, 452 (2000).

Collateral estoppel is inappropriate here because the parties against whom Plaintiff is asserting estoppel—the Defendant Officers and the City—were not parties or privies to the prior adjudication. At the suppression hearing, the Cook County State's Attorney's Office argued that Mr. Torres had consented to the entry and search, and Officers Keating and Velez testified as witnesses. (*See generally* Transcript of Proceedings in the Circuit Court of Cook County, Ex. 2 to Pl.'s SOF). But the Defendant Officers were not in privity with the prosecution because they were not "so closely aligned that they represent the same legal interest." *Kunzelman v. Thompson*, 799 F.2d 1172, 1178 (7th Cir. 1986) (citation omitted). The officers were not responsible for the prosecution's charging decisions, and the City's interest was not represented

17

at all. *See id.* (concluding that collateral estoppel was inappropriate where defendant officers had no say in prosecutorial decisions); *see also Kinslow v. Ratzlaff*, 158 F.3d 1104, 1106 (10th Cir.1998) (concluding, under Oklahoma law, that defendant officers in a § 1983 suit were not parties or privies to the state in a prior criminal case); *Duncan v. Clements*, 744 F.2d 48, 51–53 (8th Cir.1984) (reaching the same conclusion under Missouri law); *Degironne v. Furlong*, No. 08 C 5696, 2010 WL 1978682, at *2–3 (N.D. Ill. May 14, 2010) (reaching the same conclusion under Illinois law, but noting that Illinois courts have not directly addressed whether law enforcement officers are in privity with the state in a criminal prosecution).

As Defendants are not the same parties or privies to the prosecution in the prior criminal proceeding, the court need not address whether Plaintiff has satisfied the other elements of collateral estoppel.

## C. Counts III and IV (Illegal Restraint and False Arrest)

Defendants also seek summary judgment on Plaintiff's claims of illegal restraint and false arrest. The law on such claims is well-established: "A police officer has probable cause to arrest an individual when the facts and circumstances that are known to him reasonably support a belief that the individual has committed, is committing, or is about to [ ] commit a crime." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 679 (7th Cir. 2007). Defendants argue that probable cause justified handcuffing and arresting Plaintiff because the Defendant Officers discovered cocaine, a gun, and cash in his apartment. (Defs.' Mem. at 8–9.) Plaintiff responds that Defendants' failure to obtain his consent to enter and search taints his subsequent detention and arrest. (Pl.'s Mem. at 8–11.) He also insists that he was handcuffed (and thus unlawfully restrained) "immediately" after Officers Gurrola and Velez entered—before Defendants found any evidence that Plaintiff had committed a crime. (Pl.'s SOF ¶ 12.)

### 1. "Illegal Restraint"

18

The court understands Count III ("Illegal Restraint") to allege an unreasonable seizure when Officers Velez and Gurrola placed Mr. Torres in handcuffs. (*See* Am. Compl. ¶ 36–38.) A seizure occurs when, "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Kaup v. Texas*, 538 U.S. 626, 629 (2003) (internal quotation marks and citations omitted). The Seventh Circuit has observed that police may sometimes place an individual in handcuffs without converting an investigatory stop into an arrest requiring probable cause. *See United States v. Eatman*, 942 F.3d 344, 347 (7th Cir. 2019) (citing *United States v. Glenna*, 878 F.2d 967, 971–72 (7th Cir.1989)). Investigatory stops, by contrast, require only reasonable suspicion. *See generally Terry v. Ohio*, 392 U.S. 1 (1968). For the purpose of resolving this motion, the court assumes that Plaintiff may have been seized when he was handcuffed in his own apartment.[13]

Plaintiff does not dispute that Defendants found cocaine, cash, and a gun in his apartment. (Defs.' SOF ¶ 25; Pl.'s Resp. to Defs.' SOF ¶ 25.) The discovery of these items established probable cause to arrest Plaintiff because such evidence would "reasonably support a belief that [Plaintiff] committed, is committing, or is about to [ ] commit a crime." *Holmes*, 511 F.3d at 679. Defendants are correct that probable cause generally defeats a § 1983 claim for damages flowing from a wrongful detention or false arrest. *See Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution."). This is true even if constitutional violations preceded the officers' probable cause determination

---

[13]      Plaintiff notes that, at the suppression hearing, the state court judge opined that Mr. Torres was not free to leave the scene because he was handcuffed. (*See* Pl.'s Mem. at 5 (citing Ex. 2 149:22-24, 150:1-6, 152:11-21).) But as discussed above, Plaintiff cannot apply offensive collateral estoppel to issues that the state court decided because Defendants were not in privity with the prosecution. Moreover, the state court judge's basis for granting the motion to suppress was that Mr. Torres did not consent, not that he had been seized. Thus, the state court judge's remark does not have preclusive effect in this court.

because, as the Seventh Circuit recently clarified, "the exclusionary rule does not apply in a civil suit under § 1983 against police officers." *Martin v. Marinez*, 934 F.3d 594, 598 (7th Cir. 2019). In other words, even if the evidence providing probable cause was the fruit of a warrantless entry and search without Plaintiff's consent, probable cause still insulates Defendants from liability.

Plaintiff is nevertheless correct that if he was handcuffed *before* Defendants discovered contraband in his apartment, he may have a claim for an unreasonable seizure. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that immediately handcuffing him in his own home was unreasonable. Accordingly, Defendants' motion for summary judgment on Count III is granted in part. This claim may proceed only to the extent that Plaintiff seeks damages (which may be nominal) for the period that he was in handcuffs before Defendants discovered evidence supporting his arrest. *See Martin*, 934 F.3d at 605 (affirming that nominal damages were appropriate for an unconstitutional stop preceding the existence of probable cause to arrest). Unfortunately, Plaintiff may not recover damages for the 371 days he spent in jail awaiting trial. *See Martin*, 934 F.3d at 605 (holding that a § 1983 plaintiff could not recover post-arrest damages following a Fourth Amendment violation where probable cause supported his arrest but the exclusionary rule protected him from criminal prosecution). "[T]o award damages for . . . incarceration that followed an illegal search would be tantamount to awarding a windfall benefit in that the plaintiff 'already reaped an enormous benefit by reason of the illegal . . . search to which he was subjected: his freedom, achieved by the suppression of evidence obtained in violation of the Fourth Amendment.'" *Id.* at 601–02 (quoting *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999)).

### 2. False Arrest

The preceding analysis of Count III makes clear that the existence of probable cause to arrest bars Plaintiff's § 1983 claim for false arrest. *See Mustafa*, 442 F.3d at 547. Plaintiff's assertion that evidence justifying his arrest was the fruit of an unconstitutional arrest and search

does not change this conclusion. *See Martin*, 934 F.3d at 605. In contrast to his allegations in support of Count III, Plaintiff has not alleged that Defendants arrested him before they discovered the drugs, cash, and gun. The undisputed facts do not make out a violation of his due process rights. The court therefore grants Defendants' motion for summary judgment on Count IV as to all Defendants.

## CONCLUSION

For the reasons stated in this opinion, Defendants' motion for summary judgment [76] is granted in part and denied in part.

ENTER:

Dated: February 4, 2021

_____
REBECCA R. PALLMEYER
United States District Judge

21